DIRECTOR, STATE EMPLOYEES WORKERS' COMPENSATION DIVISION, STATE OF TEXAS, Appellant,

v.

Mary B. LARA, Appellee.

No. 08–94–00033–CV.

Court of Appeals of Texas, El Paso.

April 27, 1995.

Rehearing Overruled June 7, 1995.

Dan Morales, Atty. Gen., Steven Snelson, Asst. Atty. Gen., Austin, for appellant.

Jim T. Osborn, Odessa, Larry Zinn, San Antonio, for appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

The Director of the State Employees Workers' Compensation Division of the State of Texas appeals a judgment of the trial court that awards to Appellee the entire sum of her damages as assessed by a jury without an offset for the benefits already paid by Appellant. We modify and, as modified, affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

Appellee was injured on February 4, 1990, while in the employ of the State. Appellant began paying Appellee weekly workers' compensation benefits sometime in mid–1990. Appellee later sued for her injuries, and a jury found that she sustained the total and permanent loss of the use of her right leg. The jury further found that her average daily wage was $54, which sum, when multiplied by the applicable benefit period and discounted as prescribed by statute, resulted in a judgment of $44,521.91. The trial court entered judgment on the verdict without crediting Appellant for the payments he already made to Appellee.

## II. DISCUSSION

In a single point of error, Appellant claims the trial court erred by entering judgment against him without crediting to him the total value of the weekly benefits already paid to Appellee. We agree.

A workers' compensation carrier is entitled to an offset for previous payments when such payments are properly pled and proved. *Director, State Employees Workers' Comp. Div. v. Dominguez,* 786 S.W.2d 68 (Tex.App.—El Paso 1990, no writ). Credit for payments made is an affirmative defense. *Id.* at 70.

The parties do not dispute that Appellant properly pled payment. They dispute only whether Appellant successfully proved that he made payments. Evidence that the worker received some weekly payments does not entitle the carrier to an offset. *Director, State Employees Workers' Comp. Div. v. Dominguez,* 786 S.W.2d at 70; *Old Republic Ins. v. Diaz,* 750 S.W.2d 807, 810 (Tex.App.—El Paso 1988, writ denied). To receive an offset, the carrier must go further with the evidence and show the number and amount of weekly payments received. *Old Republic Ins. v. Diaz,* 750 S.W.2d at 810. When the worker admits he received payments in a lesser amount or for a lesser time period than the insurer alleges or otherwise furnishes the basis for an arithmetical calculation of the credit, the carrier is entitled to a credit for those payments the worker acknowledges receiving or to any credit that may be properly calculated. *Nat'l Union Fire Ins. v. Wyar,* 821 S.W.2d 291, 294 (Tex.App.—Houston [1st Dist.] 1991, no writ).

### A. Testimonial Evidence

Appellee admitted· at trial that she received some benefits. Appellant claims that Appellee admitted receiving $203.79 every Monday since at least August of 1990,[1] which

---

1. On April 26, 1993, during testimony adduced before the jury, the following exchange occurred between Appellee and Appellant's trial counsel:

Q. How much are you getting per week in worker's comp and when do you generally receive it?
A. I get $203.79 per week every Monday.

constitutes the vast majority of the payments for which Appellant seeks an offset. Given the date of her testimony, Appellant reasons, she effectively admitted receiving $28,123.02.[2] The transcription of Appellee's testimony, however, reveals that she admitted only two things: (1) that she was currently receiving weekly payments of $203.79; and (2) that she had received some payments since August of 1990. She did not link one to the other. Appellant made no effort to link the two elements, neither inquiring whether the amount of the payments had been consistent over their duration, nor asking Appellee for the sum total of the payments she received. Because the offset Appellant seeks is an affirmative defense, it was his burden to do so. Appellant established only that Appellee received some benefits and thus failed to carry his burden to show the amount of those benefits. Cf. Nat'l Union Fire Ins. v. Wyar, 821 S.W.2d at 294 (holding admission to payment amount and duration "furnishe[d] the basis for an arithmetical calculation ... [that] conclusively established" the credit). Insofar as Appellant relies on Appellee's testimony to satisfy this burden, Appellant's point of error is overruled.

### B. Documentary Evidence

Appellant claims documentary evidence submitted during trial and at a hearing on a motion to enter judgment entitled him to credit for an equal or greater sum. At several different stages in the litigation, Appellant introduced documentary and oral testimony that he paid weekly benefits to Appellee variously totaling $29,957.12; $30,772.28; $31,179.86; and $31,383.65. Although these amounts differ among each other, they do not conflict with Appellee's testimony that she received some benefits. Moreover, Appellant explained that the differences in the various amounts were attributable to the passage of time, both before and after the jury's verdict, during which time Appellant continued weekly payments. Appellee did not dispute this explanation. Thus, the evidence of the size of the credit to which Appellant was entitled conclusively established that Appellee received some benefits and further suggested the total amount of those benefits. We find this evidence sufficient to satisfy Appellant's initial burden to show the amount of the credit and thus shift to Appellee the burden to produce contradictory evidence, if any.

■ The record reflects that Appellee made no effort to contradict Appellant's documentary evidence and argued only that it was inadmissible. At the hearing on the motion to enter judgment, Appellant presented an untidy array of computer-generated documents and attempted to admit them into evidence using an affidavit from the custodian of the records.[3] Appellant claims the

---

Only later did Appellant question Appellee about the duration of her benefits:

Q. Can you tell the jury approximately, if you don't mind, when you first started receiving workers' comp., was it March of 1990, perhaps May of 1990 or even in the summer of 1990, just to give them an idea?
A. I would say about August of 1990.
Q. So, August of 1990 is when you can recall receiving weekly workers' compensation benefits?
A. Yes, sir.
Q. And is it fair to say that from August of 1990 that you have been receiving ... workers' compensation weekly?
A. Yes, sir.
Q. Were these checks ever stopped from August of 1990 up to today?
A. They were stopped ... about a month and then they start back again.

2. Appellant would have us rely on calendars for the intervening years, which reveal that 142 weeks passed from August of 1990 to the date of

Appellee's purported admission. Appellant argues that this number, less the four weeks for which Appellee testified payments were stopped, multiplied by the $203.79 amount of each payment yields a sum of $28,123.02.

3. Appellant offered a similar array during trial at a hearing held outside the presence of the jury. After Appellee objected to their admission, the following exchange occurred:

THE COURT: [T]he Court will admit them for the benefit of the Court or for whatever benefit the Court may view them having any value or if any at all.
PLAINTIFF'S ATTORNEY: Yes, sir. Thank you.
THE COURT: Well, since it's for the Court it's not for the jury and the jury is not going to be aware of this matter.
DEFENDANT'S ATTORNEY: I just want those exhibits to be introduced to prove any offset—
THE COURT: I'll go ahead and, of course, the objection is being made by counsel, you know.

affidavit made the documents admissible under Texas Rule of Evidence 902(4).[4] Initially, we note that Rule 902(4) speaks only to the authenticity of certain documentary evidence. That a document is authentic does not make it admissible, and the rule does not state otherwise. Thus, had the affidavit and accompanying documents been properly self-authenticating, Appellant still would have had to overcome Appellee's properly lodged hearsay objection. Moreover, the affidavit that Appellant claims was sufficient to authenticate the accompanying documents was wholly inadequate for this purpose. The affidavit does not certify the correctness of the documents, as Rule 902(4) requires, and makes no reference whatsoever to the documents that Appellant claims are authenticated by it. The affidavit is so deficient, in fact, that it leaves in doubt the existence of any relationship between it and the computer printouts, which relationship we were able to discern only by diligent study of record references to the materials and by the consecutive exhibit numbers affixed thereto. Further, the affidavit actually hinders Appellant's cause because, as Appellee correctly asserted at the hearing, it contains hearsay. The only substantive portion of the affidavit consists of a statement that State records indicate Appellee has received benefits in a certain amount. This is mere testimony, it is hearsay, and it is unredeemed by Appellant's reliance on Rule 902.[5] By themselves, the materials are evidence of nothing and were inadmissible over Appellee's objections.

■ Despite the facially inadequate content and confusing organization of the documents themselves, Appellant redeemed himself when he examined the custodian of the records. Appellant elicited from him testimony that the computer printouts correctly reflected the official records of the State. In

And I don't even have to rule on that matter right now. We can go on with the trial.
DEFENDANT'S ATTORNEY: Well, are Exhibit Numbers 2 through 5 admitted into evidence?
THE COURT: They're not going to be admitted into evidence. Of Course, I'll reserve a ruling on the matter, but let's go on with the trial. If it's admitted into evidence, then it will be before a jury but it's not going to be before a jury.
DEFENDANT'S ATTORNEY: I apologize, Judge. It's just for the Court's purpose.
THE COURT: All right. Go ahead and bring the jury down.
Appellee claims the documents were never admitted into evidence and apparently would have us believe that the trial court serially admitted the exhibits, reserved a ruling on her objection, ruled them inadmissible, and then reserved a ruling on their admissibility. Although Appellant's reading of the record is disturbingly reasonable, we think it evident that the trial court actually did admit the exhibits into evidence for its own use, presumably to calculate the offset sought by Appellant, and merely declined to immediately decide whether the documents would be made available to the jury. Moreover, because the evidence produced at the post-verdict hearing on the motion to enter judgment provides an independent basis for decision, we do not address the status or consequences of the similar evidence adduced at trial.

4. The rule reads:
 **Rule 902. Self–Authentication**
 *Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:*
 . . . .

(4) Certified copies of public records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraphs (1), (2), or (3) of this rule or complying with any statute or other rule prescribed pursuant to statutory authority.
Tex.R.Civ.Evid. 902(4).

5. Appellant apparently confused authenticity with hearsay. To properly establish authenticity, an affidavit should attest to the correctness of accompanying documents that the affidavit actually identifies. *See* Tex.R.Civ.Evid. 902(4). To properly overcome a hearsay objection, a separate affidavit could attest to the elements of a business record. *See* Tex.R.Civ.Evid. 803(6) (business record hearsay exception), 902(10) (permitting use of affidavit to both establish authenticity and satisfy business record hearsay exception).

Appellant's later examination of the custodian, *see infra* p. 639, belies the conclusion that he confused authenticity with hearsay or, perhaps, reveals belated insight. At an earlier point in the litigation, Appellant filed a supplemental motion to enter judgment that also revealed his proper understanding of authenticity and hearsay. The supplemental motion contained an affidavit from the record custodian that separately certified the correctness of similar financial records and contained the recitals necessary to satisfy the hearsay exception for business records, although its effort to summarize the documents, like the later facially deficient affidavit, constituted unexceptional hearsay.

so doing, Appellant remedied the deficiencies of the authenticating affidavit and thereby satisfied Texas Rule of Civil Evidence 902(4). Appellant then methodically elicited from the custodian testimony that satisfied the elements of the hearsay exception for business records. In short order, then, Appellant established that the documents were authentic and fit within the business records hearsay exception. Thus, despite Appellant's erroneous characterization of the accompanying affidavit, the documents themselves were properly admitted into evidence.

 Appellee claims that the trial court should not have allowed Appellant to present evidence of the benefits she received at the hearing, arguing that Appellant's opportunity to do so expired with the close of evidence at trial. Our review of case law has produced no cases addressing this issue, which we presume is attributable to litigants' usual ability to stipulate to the amount of benefits already paid by a workers' compensation carrier to an injured worker. In the rarely justified instance when agreement is not possible, we think a hearing on a motion to enter judgment a singularly appropriate time to broach the issue. To do so earlier would risk the presentation of evidence of a worker's already-received benefits to the jury, which might needlessly and unfairly prejudice or inflame the jury to the worker's detriment. Further, it would discourage insurers from continuing benefits through the date of judgment because they would have no opportunity to recover for post-verdict payments made to the worker. A premature cessation of benefits, even if offset by the ultimate recovery, is not in a worker's best interest. Our system of jurisprudence in this area employs juries largely to assess the financial value of a worker's injury, and leaves to courts the task of determining the extent to which the worker has already recovered for it.

As the foregoing conclusion implies, we hold that a trial court essentially sits as a factfinder to determine the benefits already received by Appellee. As factfinder, the trial court is entitled to weigh the evidence and resolve any conflict in favor of Appellee. Although the issue may be raised earlier, judicial economy counsels that the best time to raise the issue is at a hearing on a motion to enter judgment, when, assuming judgment is entered the same day and that benefit payments continue through it, the issue may for the first time be conclusively resolved. As the Texas Supreme Court has implied, *see Green v. Morales*, 834 S.W.2d 47 (Tex.1992) (orig. proceeding), the issue is well suited for resolution by summary judgment. It may, however, require the parties to adduce evidence at an evidentiary hearing before the court. In any event, whether raised by summary judgment motions and proof or by a motion to enter judgment and evidence adduced at a hearing thereon, the trial court must ultimately determine the total payments that an insurer has already paid to a worker.[6]

The evidence of the payments made by Appellant to Appellee did not conflict. Appellee acknowledged that she received benefits, and the documents produced by Appellant showed that they totaled $31,383.65 through the date of judgment. Appellee never contested Appellant's calculations and does not now claim they are incorrect. Thus, Appellee failed altogether to respond after the burden of proof passed from Appellant to her. The trial court had before it uncontradicted evidence of the credit to which Appellant was entitled. Given the absence of conflicting evidence, Appellant proved the amount of the credit to which he was entitled as a matter of law, and the trial court erred by ignoring the evidence of the credit. We therefore sustain Appellant's point of error to the extent he relies on the computer records of the State to support it.

Having sustained Appellant's point of error, we conclude that Appellant showed him-

---

**6.** When the issue arises, then, a trial court should expressly enter a fact finding reflecting its conclusion. This allows a party to appeal the finding as an issue of fact subject to sufficiency review. Absent such a finding, a party in Appellant's position can challenge the sufficiency of an implicit finding as reflected in the uncredited or inadequately credited judgment and, alternatively, the trial court's legal error in failing to reflect the amount of the "found" offset in the judgment.

self entitled to a credit of $31,383.65 as a matter of law, and we modify the judgment to reflect this credit. As modified, we affirm the judgment of the trial court.